IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Criminal Action No. 18-cr-00209-CMA-11

UNITED STATES OF AMERICA,

    Plaintiff,

v.

11. JOSE SANTIAGO-MESINAS,

    Defendant.

---

**ORDER GRANTING DEFENDANT'S MOTION FOR A SEPARATE TRIAL**

---

This matter comes before the Court on Defendant Jose Santiago-Mesinas's Motion for a Separate Trial, in which he requests that the Court order a separate trial for him on Counts One, Ten, and Eleven. (Doc. # 172.) Having fully considered the parties' arguments for and against severance, the Court finds that under Federal Rule of Criminal Procedure 14(a), proceeding to a joint trial would impermissibly prejudice Defendant. The Court therefore grants Defendant's Motion for a Separate Trial.

## I.     BACKGROUND

This case arises out of an alleged conspiracy among sixteen defendants, including Defendant, to "knowingly and intentionally conspire to distribute or possess with the intent to distribute" various amounts of methamphetamine and cocaine between July 1, 2015, and January 1, 2018. (Doc. # 1 at 1.) A federal grand jury indicted Defendant and his codefendants on this charge (Count One) on May 2, 2018. (*Id.*)

Defendant was also indicted on "travel[ling] on interstate commerce with the intent to promote . . . an unlawful activity, specifically[, the] conspiracy to distribute or possess with the intent to distribute narcotics" (Count Ten) and on "knowingly or intentionally distribut[ing] and possess[ing] with the intent to distribute 500 grams or more of a mixture of substance" containing methamphetamine (Count Eleven).  (*Id.* at 6.)  The indictment contained a total of twenty-six counts, but only Counts One, Ten, and Eleven were against Defendant.  *See generally* (*id.*)

## A. EVIDENCE SUPPORTING THE CHARGES AGAINST DEFENDANT

To provide context, the Court takes its recitation of facts from the Government's filings, primarily its Response to Defendant's Motion for a Separate Trial (Doc. # 212). The Court does not adopt these facts as findings or as the truth.

According to the Government, as part of the conspiracy to traffic narcotics into Colorado, co-defendant Adrian Pallanes-Lujano called co-defendant Omar Obeso-Gastelum in March 2017 to advise Obeso-Gastelum that he intended to travel from Arizona to Colorado the following weekend and wanted to meet with Obeso-Gastelum to discuss the transport and sale of twenty pounds of methamphetamine and four ounces of cocaine.  (*Id.* at 2.)  Later that month, Obeso-Gastelum agreed to purchase approximately twenty pounds of methamphetamine from Pallanes-Lujano and co-defendant Abraham Rivera-Flores.  (*Id.*)

Defendant transported this load of methamphetamine on April 2 and 3, 2017. (*Id.*)  In the Government's recitation of the facts, its GPS data showed that Pallanes-Lujano was heading north from Arizona, towards Colorado.  (*Id.*)  A Drug Enforcement

2

Agency officer identified his car and observed that it was "traveling in tandem with a maroon Chevy Avalanche[,] which was later determined to be the load vehicle" and to be registered to Defendant.  (*Id.* at 2–3.)

> At 12:40 a.m., on April 4, 2017, the maroon Chevy pulled over to the side of the highway with a flat tire. Troopers responded and the driver was positively identified as Jose Santiago-Mesinas [Defendant]. The vehicle was towed to a storage facility, secured, and ultimately searched after a warrant was obtained. The methamphetamine was hidden in several locations . . . In total, twenty packages of methamphetamine were recovered.

(*Id.* at 3.)

In Defendant's view, "the only evidence against [him] relates to his being observed driving a 2004 maroon Chevrolet Avalanche from Yuma, Arizona in the direction of Denver, Colorado on April 3, 2017." (Doc. # 172 at 3.) Defendant asserts that investigators were surveilling his vehicle as he was driving it north based on "intercepted electronic communications" between certain codefendants that he did not participate in and that did not mention him. (*Id.*) Investigators requested that the Colorado State Patrol contact and question the driver of the maroon Chevrolet Avalanche, and the Colorado State Patrol followed Defendant to Trinidad, Colorado, where his car broke down. (*Id.*) The patrol officers seized Defendant's car and towed it to a secure location and detained and questioned Defendant. (*Id.*) Investigators later obtained a search warrant for the vehicle and then discovered "approximately twenty-five packages of methamphetamine concealed in a secret compartment on the underside of the vehicle." (*Id.* at 4.)

## B. PROCEDURAL HISTORY

The federal grand jury indicted Defendant and his codefendants on May 2, 2018, as the Court already explained. (Doc. # 1.) Defendant was arrested on May 10, 2018, in California and made his initial appearance before the District Court for the Southern District of California on the same day. (Doc. # 102.)

This Court declared the case complex as to the defendants who were then represented by counsel pursuant to 18 U.S.C. 3161(h)(7)(A) and (B)(ii) on May 24, 2018.[1] (Doc. # 108.) The Court simultaneously granted an ends of justice continuance of 150 days, which had the effect of resetting the earliest speedy trial date of the codefendants from July 24, 2018, to December 21, 2018. (*Id.* at 2.) Defendant was not among the represented defendants.

On June 5, 2018, Defendant made his initial appearance before the District Court for the District of Colorado, entering a plea of not guilty but not contesting his continued detention. (Doc. # 123.) United States Magistrate Judge Scott Varholak appointed Defendant counsel (Doc. # 129) and committed Defendant to the custody of a correctional facility. (Doc. # 130 at 3.) He determined that Defendant failed to rebut the presumption that no condition or combination of conditions would reasonably assure Defendant's appearance and the safety of the community. (*Id.*)

On June 13, 2018, the Government filed a Motion for a Designation of Complexity and an Ends of Justice Exclusion from the Speedy Trial Calendar as to

---

[1] The Court simultaneously granted an ends of justice continuance of the entire case of 150 days, which had the effect resetting the earliest speedy trial date of the codefendants from July 24, 2018, to December 21, 2018. (Doc. # 108 at 2.)

4

Defendant and three codefendants who had also made their initial appearances and been appointed counsel after the Court first designated the case complex and granted an ends of justice exclusion on May 24, 2018. (Doc. # 158.) The Government asked that the Court again designate the complex, exclude 150 days from July 24, 2018, and find that the new speedy trial date for Defendant and these three codefendants is December 21, 2018. (*Id.* at 7.) Defendant filed a written response that he did not object to the Government's Motion for a Designation of Complexity and an Ends of Justice Exclusion from the Speedy Trial Calendar on the next day. (Doc. # 164.)

The Court granted the Government's Motion for a Designation of Complexity and an Ends of Justice Exclusion from the Speedy Trial Calendar on June 18, 2018. (Doc. # 165.) The Court affirmed as to Defendant and these three codefendants its previous May 24, 2018 Order finding the case complex, granting an ends of justice continuance, and determining that the speedy trial date is December 21, 2018. (*Id.*)

On June 19, 2018, Defendant filed the instant Motion for a Separate Trial. (Doc. # 172.) The Government failed to timely file a response by July 10, 2018, and on August 1, 2018, this Court ordered the Government to respond by August 2, 2018. (Doc. # 207.) The Government filed its Response on August 2, 2018. (Doc. # 212.) Defendant replied in support of his Motion for a Separate Trial on August 3, 2018. (Doc. # 218.) Defendant also filed a Motion to Suppress Direct and Derivative Evidence on August 2, 2018. (Doc. # 209.) The Court set a hearing on Defendant's suppression motion for August 21, 2018. (Doc. # 216.)

The Government and all codefendants **except Defendant** filed a Joint Motion for an Ends of Justice Exclusion from the Speedy Trial Calendar on August 13, 2018. (Doc. # 230.) They requested an exclusion of an additional 120 days from the speedy trial clock so that April 20, 2019, would be the new speedy trial date. (*Id.*) The Government reported that Defendant did not agree to another ends of justice continuance and an exclusion of 120 more days from the speedy trial clock. (*Id.* at 6.) It suggested that as to Defendant, the Court could:

> (1) Without further hearing, and pursuant to 18 U.S.C. § 3161(h)(6), apply a parallel and separate excludable 120 day period of time to Santiga-Mesinas [sic] due to the joinder of the defendant with codefendants (12 others in the case of Count One) as to whom no order for severance has been granted. The court could conclude that a delay of at least this duration is necessary to accommodate the efficient use of resources and to promote the purpose of having properly joined defendants tried together; (2) Hold a status conference on August 21, 2018, as to Santiago-Mesinas only as he is the only defendant who objects to the second requested ends of justice continuance and the only defendant with pending motions.

(*Id.* at 7.)

The Court granted the Government's and all codefendants except Defendant's Joint Motion for an Ends of Justice Exclusion from the Speedy Trial Calendar (Doc. # 230) on August 14, 2018. (Doc. # 231.) As a result, the speedy trial date as to all the codefendants except Defendant is now April 19, 2019. (*Id.*) Defendant's speedy trial date remains December 21, 2018. *See* (Doc. # 165.)

On August 21, 2018, the Court conducted a hearing on Defendant's Motion to Suppress Direct and Derivative Evidence (Doc. # 209). (Doc. # 235.) After hearing argument and approximately three hours of testimony from the parties, the Court denied

Defendant's suppression motion.  (*Id.*)  At the conclusion of the hearing, the Court addressed Defendant's Motion for a Separate Trial and expressed its concern that Defendant's speedy trial date is four months before all other codefendants' speedy trial date.  It stated that it was considering severing Defendant's case and requiring the Government to try it separately.  The Court ultimately withheld ruling on Defendant's Motion for a Separate Trial "until [it could] take a closer look at it."  Having now done so, the Court grants Defendant's Motion for a Separate Trial.

Defendant has recently filed a number of other motions that remain pending: a Motion to Dismiss or, in the Alternative, For Bill of Particulars (Doc. # 239); a Motion for Pretrial Disclosure of Statements and Admissions to be Offered Under Federal Rule of Evidence 801(d), Any Known Prior Inconsistent Statements of a Declarant-Witness Under Rule 801(d)(1)(A), and to Order a *James* Hearing (Doc. # 241); and a Motion to Order the Government to Preserve Evidence (Doc. # 246).  The Court will address these motions in due time.

## II.     LEGAL STANDARDS

Joinder of defendants is governed by Federal Rule of Criminal Procedure 8(b), which provides that "[t]he indictment or information may charge [two] or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense . . . ."  The underlying rationale of Rule 8(b) is to "balance the judicial efficiency inherent in group trials with fairness to the individual defendant[], whose case would be prejudiced if it were presented alongside those of defendants whose unrelated crimes could incite the

passion of the jury against him." *United States v. B & H Maint. & Const., Inc.*, No. 07-cr-00090, 2008 WL 762246, at *3 (D. Colo. Mar. 19, 2008) (internal quotation marks and citation omitted). "There is a preference in the federal system for joint trials of defendants who are indicted together," as joint trials "promote efficiency and 'serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.'" *Zafiro v. United States*, 506 U.S. 534, 537 (1993) (quoting *Richardson v. Marsh*, 481 U.S. 200, 210 (1987)). In this Circuit, it is especially "preferred that persons charged together be tried" in a conspiracy trial. *United States v. Pursley*, 474 F.3d 757, 767 n.7 (10th Cir. 2007).

However, Federal Rule of Criminal Procedure 14 recognizes that joinder, even when permitted under Rule 8(b), may prejudice either a defendant or the government. *Zafiro*, 506 U.S. at 538. Rule 14(b) provides:

> If the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

The decision to grant severance or provide other relief is vested in the sound discretion of the trial court, *United States v. Hack*, 782 F.2d 862, 870 (10th Cir. 1986), but the Supreme Court has instructed that "a district court should grant a severance under Rule 14 only if there is **a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment** about guilt or innocence," *Zafiro*, 506 U.S. at 539 (emphasis added).

The Tenth Circuit engages in a three-step inquiry when considering a motion for severance:

8

> First, it must determine whether the defenses presented are "so antagonistic that they are mutually exclusive." Second, because "[m]utually antagonistic defenses are not prejudicial per se," a defendant must further show "a serious risk that a joint trial would compromise a specific trial right ... or prevent the jury from making a reliable judgment about guilt or innocence." Third, if the first two factors are met, the trial court exercises its discretion and "weigh[s] the prejudice to a particular defendant caused by joinder against the obviously important considerations of economy and expedition in judicial administration."

*Pursley*, 474 F.3d at 765 (internal citations omitted).

In the matter now before the Court, Defendant does not assert that his defense and those of his codefendants are mutually exclusive or even antagonistic. *See generally* (Doc. ## 172, 218.) Defendant's theory is that a joint trial "will deprive [him] of the individual consideration that his case requires." (Doc. # 172 at 7–9.) He contends that he will be prejudiced by a joint trial, in short. (*Id.*) The Court therefore focuses its analysis on the second and third steps of the controlling three-step inquiry. *See Pursley*, 474 F.3d at 756.

At the second and third steps of this analytical framework, the defendant bears "the burden of clearly showing prejudice resulting from a joint trial." *United States v. Rinke*, 778 F.2d 581, 590 (10th Cir. 1985). While the "risk of prejudice will vary with the facts in each case," *Zafiro*, 506 U.S. at 539, it is a general principle that "[n]either a mere allegation that the defendant would have a better chance of acquittal in a separate trial, nor a complaint of the 'spillover effect' from the evidence that was overwhelming or more damaging against the co-defendant than that against the moving party is sufficient to warrant severance," *United States v. Small*, 423 F.3d 1164, 1182 (10th Cir. 2005) (quoting *Hack*, 782 F.2d at 870)). Where, however, the defendant can demonstrate that

9

there is a substantial risk that the jury will not be able to compartmentalize the evidence against each defendant and the defendant will therefore by prejudiced by a joint trial, severance may be warranted under Rule 14(b). *United States v. Hines*, 696 F.2d 722, 731 (10th Cir. 1982); *see, e.g., United States v. Jackson*, 64 F.3d 1213, 1217 (8th Cir. 1995), *cert. denied*, 516 U.S. 1137 (1996). The risk of such prejudice is "heightened" "[w]hen many defendants are tried together in a complex case and they have markedly different degrees of culpability." *Zafiro*, 506 U.S. at 539 (citing *Kotteakos v. United States*, 328 U.S. 750, 774–75 (1946)); *see Krulewitch v. United States*, 336 U.S. 440, 454 (1949) (Jackson, J., concurring in the judgment and opinion) ("It is difficult for the individual to make his own case stand on its own merits in the minds of jurors who are ready to believe that birds of a feather are flocked together.").

In some circumstances, measures less drastic than severance, such as limiting instructions to the jury, may suffice to cure a risk of prejudice. *Zafiro*, 506 U.S. at 539; *see, e.g., United States v. Hutchinson*, 573 F.3d 1011, 1030–31 (10th Cir. 2009) (concluding that the district court's limiting instructions "cured any possibility of prejudice and thus that the court acted within its discretion in denying [a defendant's] motion for severance"). The Court is conscious, however, that "[t]he naïve assumption that prejudicial effects can be overcome by instructions to the jury . . . all practicing lawyers know to be unmitigated fiction." *Krulewitch*, 336 U.S. at 453 (Jackson, J., concurring in the judgment and opinion); *see, e.g., United States v. Stoecker*, 920 F. Supp. 876, 886 (N.D. Ill. 1996) ("In instances where the evidentiary disparity is unquestionable[,] the

court will not presume that jury instructions will adequately cure potential prejudice, and severance is appropriate").

### III.    ANALYSIS

Because Defendant does not argue that his codefendants' defenses are antagonistic to his own, the Court begins its analysis at the second of three steps and must determine whether Defendant shows "a serious risk that a joint trial would compromise a specific trial right . . . or prevent the jury from making a reliable judgment about guilt or innocence."  *Pursley*, 474 F.3d at 756 (internal quotation omitted.)  For the reasons described below, the Court concludes that Defendant alleges a serious risk that a joint trial would both prevent the jury from making a reliable judgment and compromise a specific trial right.  At the third step of the analysis, *see id.*, prejudice to Defendant caused by joinder outweighs considerations of judicial economy and expeditiousness.  Severance is therefore warranted pursuant to Rule 14(b).

### A.    A JOINT TRIAL MAY PREVENT THE JURY FROM MAKING A RELIABLE JUDGMENT ABOUT DEFENDANT'S CULPABILITY

The Court concludes that Defendant sufficiently demonstrates that there is a substantial risk that a jury will not be able to compartmentalize the evidence against him to make an independent determination of his guilt or innocence.  *See United States v. Anthony*, 565 F.2d 533, 538–39 (8th Cir. 1977).  The alleged acts of the sixteen codefendants in this matter span nearly two and half years, from July 1, 2015, through January 1, 2018, involve the distribution of both cocaine and methamphetamine, and took place in the State of Colorado "and elsewhere."  (Doc. # 1 at 2.)  The Government asserts twenty-six criminal counts against the codefendants.  (*Id*. at 26.)  Several

11

codefendants, such as Defendant Omar Obeso-Gastellum, are alleged to have participated in multiple drug distribution efforts on several dates. *See, e.g.*, (*id.* at 2, 7.) And in regard to the claims against Defendant arising out of the incidents of April 3, 2017, pretrial discovery has disclosed that the Government was monitoring electronic communications between at least three codefendants for several weeks before April 3, 2017. *See* (Doc. # 172 at 2; Doc. # 172-1.)

However, Defendant was not involved in any of these tracked communications, nor was he identified by the codefendants in their communications. (*Id*. at 3.) The only evidence the Government had against him prior to his interaction with the Colorado State Patrol when his car suffered a flat tire was investigators' observation of him driving a 2004 maroon Chevrolet Avalanche north on I-25 in Colorado on April 3, 2017. (Doc. # 172-1 at 6–7.) Defendant accurately summarizes the dearth of any evidence suggesting that he played a significant role in the alleged conspiracy:

> The [G]overnment's evidence shows no verbal communications between [Defendant] and any of the fifteen charged codefendants, no observation of any illicit activity by [Defendant] or any activity other than driving an SUV on I-25 on April 3, 2017. There appears to be no evidence that he was involved with any activity relating to the 25 pounds of methamphetamine on April 3, 2017, other than operating a vehicle in the which the drugs were secreted. Moreover, there is no evidence which relates to his having anything to do with the distribution or possession with intent to distribute other quantities of methamphetamine on days other than April 3, or with any quantities of cocaine.

(Doc. # 172 at 4.)

While "a mere disparity in the evidence from a quantitative standpoint against each defendant in a conspiracy case, without more, provides no justification for severance," *Hack*, 782 F.2d at 871, the quantitative and qualitative differences between

the alleged conduct of many codefendants versus that of Defendant warrants severance in this case. The Supreme Court has recognized that "[w]hen many defendants are tried together in a complex case and they have markedly different degrees of culpability," the risk of prejudice to a specific defendant is "heightened." *Zafiro*, 506 U.S. at 539. The risk of prejudice to Defendant in this matter is certainly heightened, given the "markedly different degrees of culpability" between him and the codefendants. *See, e.g., United States v. Baca*, No. CR 16-1613 JB, 2016 WL 6404772, *31 (D.N.M. Oct. 20, 2016) (granting the moving defendant a separate trial in part because "he was allegedly involved in a single incident" and had "a markedly different degree of culpability" than his codefendants). A separate trial of Defendant is necessary in light of this elevated risk of prejudice.

**B.    A JOINT TRIAL MAY INFRINGE UPON DEFENDANT'S RIGHT TO A SPEEDY TRIAL**

The Court also is wary that a joint trial would compromise a specific trial right—Defendant's right to a speedy trial. The right to a speedy trial is both constitutional and statutory. The Sixth Amendment to the Constitution provides:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

U.S. Const. amend. VI. The Speedy Trial Act specifies that:

> In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence **within seventy days** from the filing date (and making

public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.

18 U.S.C. § 3161(c)(1) (emphasis added). "The purpose of the Speedy Trial Act is two-fold—to protect a defendant's constitutional right to a speedy indictment and trial, and to serve the public interest in bringing prompt criminal proceedings." *United States v. Gonzales*, 137 F.3d 1431, 1432 (10th Cir. 1998) (internal quotation omitted). The Speedy Trial Act excludes certain periods of delay from the seventy-day limit, *id.*, including, relevant here, any period of delay "resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial," 18 U.S.C. § 3161(h)(7)(A).

As the Court previously explained, Defendant's speedy trial date is December 21, 2018. *See* (Doc. # 165.) All of his codefendants joined the Government in requesting an ends of justice continuance (Doc. # 230), which Defendant expressly did not join. As a result of the Court's order on the codefendants' and the Government's Joint Motion for an Ends of Justice Exclusion from the Speedy Trial Calendar, the codefendants' speedy trial date is April 19, 2019, (Doc. # 231)—four months after Defendant's speedy trial date.

In light of Defendant's express invocation of his right to a speedy trial and the fourth-month period between Defendant's speedy trial date and that of his

codefendants, severance is proper. The district court's ruling in *United States v. Byrd*, 466 F. Supp. 2d 550, 553 (S.D.N.Y. 2006), is instructive. *See Baca*, 2016 WL 6404772 at *31 (relying in part on *Byrd*). The defendant in that case was indicted as a codefendant in a racketeering conspiracy. *Byrd*, 466 F. Supp. 2d at 553. The district court determined that "from the standpoint [of the defendant]," who was not eligible for the severe penalties his codefendants faced, who had pleaded not guilty, "who [was] being detained without bail," and who "ha[d] expressly invoked his Speedy Trial rights," any delay under Section 3161(h)(7)(A) was "unreasonable and totally at variance with the fundamental purposes of the Speedy Trial Act." *Id*. In the matter currently before this Court, Defendant faces similar circumstances, including a lesser degree of culpability, detention in a correctional facility, and express invocation of his speedy trial rights. And the Court reaches a similar conclusion: Defendant is entitled to separate trial. *See id*.; *see also Baca*, 2016 WL 6404772 at *31 (granting the defendant's motion to sever where the defendant expressly invoked his speedy trial right and his codefendants' trial was to be delayed for months).

The Court declines the Government's request to, "[w]ithout further hearing, and pursuant to 18 U.S.C. § 3161(h)(6), apply a parallel and separate excludable 120 day period of time to Santiga-Mesinas [sic] due to the joinder of the defendant with codefendants (12 others in the case of Count One) as to whom no order for severance has been granted," (Doc. # 230 at 7), for the same reasons.

### C. POTENTIAL PREJUDICE TO DEFENDANT OUTWEIGHS CONSIDERATIONS OF JUDICIAL ECONOMY AND EXPEDITION

Having concluded at the second step of its analysis that Defendant shows that a joint trial would prevent the jury from making a reliable judgment about his culpability and would compromise his right to a speedy trial, the Court next addresses the third step, weighing "the prejudice to a particular defendant caused by joinder against the obviously important considerations of economy and expedition in judicial administration." *Pursley*, 474 F.3d at 765 (internal citations omitted). For the reasons stated above, Defendant carries his "heavy burden of showing real prejudice to his case." *See United States v. Petersen*, 611 F.2d 1313, 1331 (10th Cir. 1979). Moreover, the Government utterly fails to convince the Court of any particular concerns about economy and expeditiousness in trying a case against Defendant and a separate case against his codefendants. *See generally* (Doc. # 212.) Given that the Government alleges Defendant was only involved with the transportation of methamphetamine on one date and its evidence of Defendant's participation in a larger conspiracy is circumstantial at best, the Court does not expect a trial on the charges against Defendant to take more than a few days. And in a trial for Defendant only, the Government will not need to introduce evidence that it will rely on in its more wide-ranging case against the fifteen codefendants; the Court does not expect much duplicative evidence.

The Court concludes that the prejudice to Defendant caused by joinder outweighs concerns about judicial economy and expedition. It therefore grants Defendant's Motion for a Separate Trial pursuant to Rule 14(b).

## IV. **CONCLUSION**

For these reasons, the Court GRANTS Defendant's Motion for a Separate Trial. (Doc. # 172.) Defendant's case is severed from that of his fifteen codefendants.

DATED: October 9, 2018

BY THE COURT:

*[signature]*

_____
CHRISTINE M. ARGUELLO
United States District Judge